IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:22-cr-00036-M

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>DESMOND ANTONIO HINES,<br><br>　　Defendant. | ORDER |

This matter comes before the court on Defendant Desmond Antonio Hines's ("Hines") motion to suppress [DE 61]. Hines seeks to suppress the results matching his control deoxyribonucleic acid ("DNA") sample to DNA found on a discarded firearm because the search warrant authorizing the control sample lacked probable cause for the belief that his DNA would constitute evidence of the crime of possession of a firearm by a convicted felon. The motion is fully briefed. Because there is no genuine dispute of material fact and because the briefs sufficiently describe the parties' respective positions, an evidentiary hearing and oral argument are unnecessary. For the reasons that follow, the motion is denied.

### I.  Background

#### A. Factual Background

The evidence introduced by the parties, including a search warrant [DE 61-2]; a police report [DE 61-3]; an affidavit supporting the search warrant [DE 68-1]; and a forensic examination request [DE 61-5], demonstrates the following relevant facts:

On March 31, 2022, at approximately 1:22 p.m., Alcohol, Tobacco, Firearms, and Explosives Bureau Task Force Officer and Wilmington Police Department ("WPD") Detective T.

Moon ("Detective Moon") started surveilling Hines at his girlfriend's known address. Detective Moon was in plain clothes in an unmarked car. Detective Moon knew that Hines had an active federal indictment stemming from his November 7, 2020 encounter with law enforcement. He saw in the driveway a dark grey minivan with tinted windows and black wheels. At approximately 3:00 p.m., Detective Moon saw Hines walk from the residence to the road and then back toward the front of the residence with a package in his hands. He also saw Hines wearing "a black jacket and white t-shirt." DE 68-1 ¶¶ 1–6.

At approximately 3:07 p.m., Detective Moon saw Hines get into the minivan and drive toward him. According to his report, Detective Moon believed that Hines saw his vehicle as he drove past it. Detective Moon also believed that Hines's subsequent maneuvers through and around the neighborhood indicated evasive action. Hines made multiple turns until law enforcement lost sight of him. *Id.* ¶¶ 7–10.

By this time, additional detectives were assisting Detective Moon. They relocated the minivan traveling toward the residence and away from a nearby cul-de-sac. At 3:16 p.m., law enforcement stopped the minivan and arrested Hines. As Detective Moon approached the minivan, he immediately smelled the odor of marijuana. Law enforcement searched the vehicle and found Hines's direct deposit form, which indicated he lived at his girlfriend's address. They did not find marijuana. *Id.* ¶¶ 12–13.

As the other detectives searched the minivan, Detective Moon heard a call for service over the radio about a firearm discarded into the bushes at the nearby cul-de-sac. Witnesses described the individual who discarded the firearm as a tall black man wearing "a dark grey hoodie and faded blue jeans." They described the vehicle as a dark colored minivan with dark wheels. Officers responded to the service call. *Id.* ¶¶ 14–16.

Law enforcement located the firearm, a .40 caliber semiautomatic handgun equipped with an aftermarket extended magazine and cocked with a live round in the chamber. Because it was raining, another detective ("St. Pierre") covered the firearm with a piece of plastic and placed a traffic cone on top of the evidence to preserve its integrity. WPD Crime Scene Investigators later responded to collect and process the firearm. *Id.* ¶¶ 16–17.

On April 1, 2022, Detective Moon applied for a search warrant to collect a DNA sample from Hines "to compare with physical evidence collected in this investigation." *See id.* at 2. He recited the foregoing events in the supporting affidavit. *See id.* at 4–6. The magistrate found that the affidavit provided probable cause to believe that a DNA sample would constitute evidence of the crime of possession of a firearm by a convicted felon under state law. *See id.* Detective Moon then collected the sample and returned the warrant a few minutes later. *Id.*

### B. Procedural History

Although the United States had previously charged Hines with one drug trafficking offense (possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1)) [DE 1], the circumstances described above caused the United States to charge Hines with the additional offense of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 [DE 15]. On July 11, 2023, Hines filed the instant suppression motion [DE 61]. The United States timely responded [DE 68]; Hines did not reply. This matter is ripe for disposition.

## II. Legal Standard

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Generally, a warrant ensures the reasonableness of a search or seizure as long as it is issued "upon probable cause, supported by Oath or affirmation, and particularly describing the

3

place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also Dalia v. United States*, 441 U.S. 238, 255 (1979).

Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). In making a probable cause assessment, a judicial officer must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1990)). Additionally, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011) (quoting *United States v. Richardson*, 607 F.3d 357, 371 (2010)). This initial determination is afforded "great deference." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1080 (2021). Accordingly, in reviewing a probable cause determination, this court must determine whether the affidavit provided the issuing judicial officer "a substantial basis" for their probable cause determination. *Id.*

### III. Discussion

Defendant challenges the sufficiency of the affidavit supporting the warrant, arguing that it failed to demonstrate probable cause that a DNA sample would constitute evidence that Hines possessed the firearm in violation of state law. *See* DE 61. The court disagrees.

The court has already found that the factual basis provided in the affidavit at issue substantially supports probable cause for culpable possession of the discarded firearm. *See* DE 41 at 20. In the court's previous order denying Hines's first suppression motion, the court evaluated the sufficiency of an affidavit submitted in support of searching Hines's residence for evidence of

4

culpable firearm possession. *See id.* at 20. The factual basis provided in that affidavit demonstrated that law enforcement's direct observations of Hines matched the description of the individual whom eyewitnesses had seen discard the firearm. *Id.* That factual basis also showed that he had recently been in the vicinity of the firearm's location when the officers regained a visual of him. *Id.* The affidavit authorizing the DNA sample at issue here provides the same factual basis the court had previously found sufficient to support probable cause for culpable firearm possession. *See* DE 41 at 4–5 (stating that law enforcement had seen Hines wearing "a black jacket and white t-shirt" and driving a "dark grey minivan with tinted windows and black wheels" and that witnesses described the individual discarding the firearm as "a tall black man wearing a dark grey hoodie and faded blue jeans" and "a dark colored minivan with dark wheels"); *see also* DE 22-7 at 1 (same). Based on the factual basis provided in the challenged affidavit, the court finds that there was a substantial basis to believe that Hines had culpably possessed the discarded firearm.

The remaining question is whether the affidavit provides a substantial basis to believe that Hines's DNA would constitute evidence supporting culpable firearm possession. Because the affidavit demonstrates a fair probability that Hines possessed the discarded firearm, it provides a substantially similar probability that his DNA would match the DNA found on the firearm. Because the parties do not genuinely dispute any of the facts supporting the court's conclusion, the court need not conduct an evidentiary hearing. *United States v. Griffin*, 811 F. App'x 815, 816 (4th Cir. 2020); *United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994).

Even if this court were to find that the affidavit did not demonstrate probable cause, the court would find that the good faith exception to the exclusionary rule applies. "Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant

5

will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). The evidence does not show that Detective Moon was dishonest or reckless in preparing the affidavit, and as explained above, the factual basis described in the affidavit supports an objectively reasonable probable cause determination.

Hines presents two arguments supporting his motion. First, because law enforcement had not charged him with felon in possession of a firearm, or any offense for which DNA collection was required under the North Carolina DNA Database and Databank Act (the "Act"), N.C. Gen. Stat. § 15A-266 *et seq.*, the search was unreasonable. *See* DE 61 at 6–7. Second, because the Act does not authorize DNA analysis for "investigative" purposes, the warrant violated the Act and was therefore improper. *See* DE 61 at 9.

Neither argument is persuasive. His first argument fails because the validity of neither the warrant nor the magistrate's probable cause determination depended on whether an actual charge had been filed. *See, e.g., Dalia*, 441 U.S. at 255; *Ornelas*, 517 U.S. at 696. His second argument fails because the "federal inquiry" regarding the admissibility of evidence "has not turned on whether a state officer violated state law in securing probative evidence," but rather "whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution." *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) (quoting *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir.1993)). Since the warrant was based on sufficient probable cause for Fourth Amendment purposes, Hines's motion must be denied.[1]

---

[1] To the extent that Hines argues the warrant fails because the offense of firearm possession by a felon does not require DNA collection under the Act, *see* DE 61 at 6, the reasoning contained

6

## IV. Conclusion

The affidavit supporting the search warrant provided a substantial basis for the magistrate's probable cause determination that Hines's DNA would constitute evidence of culpable firearm possession. None of Hines's arguments persuade the court to conclude otherwise. Thus, for the foregoing reasons, the motion [DE 61] is DENIED.

SO ORDERED this ___3___ day of August, 2023.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

---

in *Clyburn* leads the court to reject that argument, *see* 24 F.3d at 616. Moreover, just because a sample must be taken in certain cases, it does not follow that a sample may not be taken in other cases, specifically when a valid warrant has been issued. *See* § 15A-266.3A. Defendant fails to provide, and the court cannot find, legal authority supporting the contrary.